# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1146
Filed July 22, 2026

———————————

**Stephen Robert Stark a/k/a Stephen Robert Nicholl Embree,**
Applicant–Appellant,
v.
**State of Iowa,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Boone County,
The Honorable Angela L. Doyle, Judge.

———————————

**AFFIRMED**

———————————

Tiffany Kragnes, West Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

Stephen Robert Stark appeals the district court's denial of his application for post-conviction relief. He argues (1) his trial attorney provided him with ineffective assistance of counsel by failing to strike a juror who was the second cousin of the investigating and testifying detective; (2) the district court should have applied *State v. Kraai*, 969 N.W.2d 487 (Iowa 2022), and *State v. Mathis*, 971 N.W.2d 514 (Iowa 2022), retroactively to his case; and (3) his freestanding claim of actual innocence should have been granted. On our review, we affirm the district court's denial of Stark's application.

## BACKGROUND FACTS AND PROCEEDINGS

This court previously summarized the background facts of this case in *State v. Embree*,[1] stating:

> [Stark] purchased a duplex in 2013. [Stark] immediately had an outdoor swingset removed from the yard. He resided in the duplex while repairing the units. The southern unit faced a home owned by a family with two young children. In the fall of 2016, the older child approached [Stark] in [Stark's] yard. Eventually, the younger child began to take part in the outdoor interactions. The family and [Stark] became acquainted, and the older child was allowed into [Stark's] home to play on his Xbox. The family would only allow the younger child to enter [Stark's] home if accompanied by the older sibling. However, the younger child did sometimes visit [Stark's] home unaccompanied, against the parents' wishes. At times, other neighborhood children would also visit [Stark's] home. Due to the renovations in [Stark's] duplex, the children used the Xbox in both [Stark's] bedroom and living room. The children also entered [Stark's] bedroom for horseplay when the Xbox was in the living room.
>
> In February 2017, the younger child, then five years old, told the father about physical contact with [Stark]. The child said [Stark] used his

---

[1] Stark changed his name from Steven Robert Nicholl Embree to Stephen Robert Stark during the underlying criminal case. We will refer to him by his changed name, Stark, throughout the opinion.

hand to touch the child's genitals with his hand over the child's clothing. The father contacted the police. [Stark] was interviewed and admitted to physical contact with the child.

. . . .

The child at issue also testified at trial. The child testified [Stark] touched the child's privates over clothing on more than one occasion in the living room and other areas of [Stark's] home. The child both asked [Stark] to stop and moved his hands away, but [Stark] sometimes continued to touch the child. The child also said some of the touching occurred in the living room while the older sibling was present but playing video games. Testimony from multiple witnesses revealed the child at issue would sometimes go into [Stark's] bedroom and lock the door. Testimony varied on whether [Stark] was with the child in the bedroom on those occasions. The older sibling testified the child at issue and [Stark] would wrestle in the bedroom, both with the door open and closed. The older sibling testified to knocking or pounding on the bedroom door when locked, knocking over and over again, and said it was quite a while before anyone would unlock and open the door. [Stark] testified the door would be unlocked in ten to fifteen seconds after anyone knocked. The older sibling never witnessed any inappropriate contact between [Stark] and the child at issue.

The detective who investigated and interviewed [Stark] testified. Several photographs and videos of children with [Stark] or at the [Stark] residence were found on electronic devices. The photos and videos were captured by the children and by [Stark]. Several photos and videos featured the child at issue alone, with other children, and with [Stark]. [Stark] testified he shared those photos and videos with parents of the children. The detective testified that when asked about contact with the child's genitals, [Stark] was

sure that at some point in time that he had touched the child in the child's private area because of their wrestling. He stated it was not sexual.

But he's sure that he did touch the child at different times between the child's legs and the child's private area. He said it was over the clothes. He denied touching the child under the child's clothes except for when he would tickle the child, and other than

3

that, basically it was because of the—that they were wrestling and stuff like that.

On cross-examination, the detective testified that [Stark] clarified the tickling was on the child's belly area. The detective testified that [Stark] also admitted in his interview that the child would climb on him and sit on his knee. The detective commented it seemed strange that [Stark], in his thirties, reported he could not keep the child, then five years old, from locking the bedroom door. But, testimony shows the child frequently locked doors in playing with the older sibling.

[Stark] also testified at trial. His testimony revealed that initially when the children came into his home, there was no door leading into the bedroom. After the door was installed, there were gaps in the frame that allow a person to see into the bedroom. Furthermore, he testified any contact he had with the child's genital area came from a horse game in which children would climb on his back and race into the bedroom. [Stark] insisted none of his contact with the child was sexual in nature.

No. 19-0578, 2020 WL 3264379, at *1–3 (Iowa Ct. App. June 17, 2020) (cleaned up).

In January 2019, a jury convicted Stark of sexual abuse in the second degree. During voir dire, Stark's trial counsel declined to strike juror D.P. who was related to the testifying detective, John Mayse. The juror and the detective were second cousins. This juror ended up serving on the panel that convicted Stark. The juror stated that she and the detective did not keep in regular contact and had not spoken in years. The juror also stated that she could be impartial and could still evaluate his testimony fairly.

The State filed proposed jury instructions on January 8, 2019. Included in the filing was instruction no. 17, which provided "The law does not require that the testimony of the alleged victim be corroborated." At trial, Stark's counsel did not object to the proposed instruction, and the district court adopted it along with the other proposed instructions.

4

Stark appealed, and our court affirmed his conviction. Even before our court rendered a decision on his direct appeal for relief, Stark filed a pro se application for post-conviction relief (PCR). The PCR proceedings were stayed until the end of the direct appeal proceedings, at which time the stay was lifted. The matter came to trial on Stark's un-amended PCR application. Stark testified in support of his claims, and his trial counsel testified as well. After the postconviction trial, Stark's PCR counsel filed a brief that appears to narrow the issues to whether counsel was ineffective for failing to strike the juror who was related to the detective, and whether *State v. Kraai* and *State v. Mathis* applied retroactively. The district court denied relief and this appeal follows.

## STANDARD OF REVIEW

"We review claims of ineffective assistance of counsel de novo." *State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020). Questions of retroactive application of law in PCR proceedings are reviews for corrections of errors at law. *See Thongvanh v. State*, 938 N.W.2d 2, 8 (Iowa 2020). We review actual innocence claims de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

## DISCUSSION

### I.   Ineffective Assistance of Counsel

Stark claims he received ineffective assistance of counsel because his trial counsel failed to strike juror D.P., the second cousin of detective John Mayse who investigated the case and testified at trial. He asserts that leaving a juror on the panel who is related to the detective in a case was outside the range of professional competence in a case that "turned largely on witness credibility and the framing of Stark's statements and conduct by law enforcement."

To prove his claim, Stark must show his attorney (1) failed to perform an essential duty; and (2) the failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Boothby*, 951 N.W.2d at 863. Not only is the burden on Stark to establish both elements, but "[r]epresentation by counsel is presumed competent." *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

Despite Stark's arguments, there were no for cause grounds available to Stark's counsel to strike the juror. Iowa Rule of Criminal Procedure 2.18(5)(d) and (k) are the only possible fits, and neither subsection supports removing juror D.P. for cause. Rule 2.18(5)(d) permits striking a juror for cause if they are related by "[a]ffinity or consanguinity, within the fourth degree," to an alleged victim, complaining witness, or defendant.[2] Detective Mayse did not fall into any of those categories, so rule 2.18(5)(d) would not have been available to Stark's counsel to strike juror D.P. for cause.

Rule 2.18(5)(k) permits striking a juror for cause if they have "formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial." But when asked whether she could fairly "evaluate

---

[2] Speaking plainly, juror D.P. would need to be related within the fourth degree, either by blood or by marriage, to the child (the alleged victim), one of the parents of the child (the complaining witnesses), or Stark (the defendant) for rule 2.18(5)(d) to apply. Iowa Code section 4.1(4) provides that "Degrees of consanguinity and affinity shall be computed according to the civil law." "A son, direct issue of his parents, is related in the first degree. A grandson is, in regard to the grandfather, in the second degree in the direct line." *Buchan v. Buchan*, 118 N.W.2d 611, 615 (Iowa 1962). Extrapolating that logic outward, "within the fourth degree" would encapsulate the above listed relatives, as well as great-grandparents, great-grandchildren, aunts, uncles, nieces, nephews, great-great-grandparents, great-great-grandchildren, first cousins, great-aunts, great-uncles, great-nieces, and great-nephews.

[Detective Mayse's] testimony," juror D.P. stated on the record "yes." Stark's Counsel then had the following exchange with juror D.P.:

> Q: How do you know detective-or Inspector Mayse? A: Actually he's related [to] me.
>
> Q: How is he related to you? A: My dad and his mother are cousins.
>
> Q: Okay. So he's a second cousin. I'm a guy so I always have trouble with that. A: It's fine, but I haven't talked to [Detective Mayse] in years. We're not close.
>
> Q: Okay. So it's not like you see him every day or socialize or anything? A: No.

Nothing about juror D.P.'s responses suggest she was biased or prejudiced against Stark, and she indicated she did not have a close relationship to the detective. In *Dukes v. State*, our court dealt with a similar situation:

> The prosecutor divulged during voir dire that he and the potential juror were related by marriage. The juror stated the relationship would not affect her judgment and she could render a fair and impartial verdict. Dukes and his attorney were aware of the relationship, did not ask additional questions, and made no objection. The juror then testified at the PCR trial that at the time of the criminal trial she was married to the prosecutor's cousin, they had a cordial but not a close relationship, she saw him perhaps one or two times per year at family functions, and the relationship did not affect her ability to render an impartial verdict. Dukes has failed to establish the juror was biased or that Dukes was prejudiced by the juror serving.

No. 17-1015, 2018 WL 6418719, at *5 (Iowa Ct. App. Dec. 5, 2018).

Juror D.P. clarified that she did not have a close relationship with Detective Mayse, just as the juror stated in *Dukes* that she did not have a close relationship with the prosecutor. *See id.* A juror being tangentially related to a prosecutor or detective participating in a case does not automatically

prejudice the defendant, and it does not disqualify that juror without some other showing of bias. *See id*. Stark has failed to establish that juror D.P. was biased against him or that he was prejudiced by juror D.P. serving on the panel. His claim of ineffective assistance of counsel therefore fails.

## II.    Jury Instruction

Stark argues the PCR court erred in denying him relief on his challenge to jury instruction no. 17. The jury instruction provided, "The law does not require that the testimony of the alleged victim be corroborated." At his PCR trial, Stark argued that two Iowa Supreme Court cases that were decided between his conviction and his PCR application created a *new* rule that should retroactively apply to his case. But now on appeal, for the first time, Stark argues these cases were instead explanations of an *old* rule and thus retroactively apply to his case on collateral review.

In the first case Stark cites, *Kraai*, the defendant was convicted of sexual abuse in the second degree. 969 N.W.2d at 490. There was a jury instruction that stated that "[t]here is no requirement that the testimony of a complainant of sexual offenses be corroborated." *Id*. This instruction is nearly identical to the instruction at issue here. Kraai contended that "the instruction violated Iowa Code section 709.6 (2017), which provides no instruction shall be given in a trial for sexual abuse cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense." *Id*. (cleaned up). Kraai also argued that "the instruction, given without any other instruction regarding other witness testimony, unduly emphasized the testimony of the alleged victim." *Id*.

The *Kraai* court held that the instruction did not violate section 709.6 and was a correct statement of the law. *Id*. at 491–92. But it also held that the

instruction was "nonetheless improper because it unduly emphasized the complainant witness's testimony." *Id*. at 492. The supreme court stated:

> Iowa law requires a court give a requested instruction as long as the instruction is a correct statement of law, is applicable to the case, and is not otherwise embodied elsewhere in the instructions. However, the district court may not give instructions that provide undue emphasis to any particular aspect of the case. Nor should the district court give instructions that draw attention to specific evidence in a case.
>
> This court has long held that instructions that set apart, highlight, or accentuate the testimony of a particular witness or a particular piece of evidence are improper.

*Id*. at 492 (cleaned up). The court went on to explain:

> The instruction's focus was improper in two respects. First, the instruction set apart N.F.'s testimony as not requiring corroboration in the absence of a symmetrical instruction regarding the noncorroboration of Kraai's testimony. The omission of a symmetrical noncorroboration instruction may have permitted the jury to infer that Kraai's testimony required corroboration to be believed. The asymmetrical noncorroboration instruction thus risked giving N.F.'s testimony special status and an extra element of weight when compared to Kraai's testimony.
>
> Second, the instruction particularized N.F.'s testimony as not requiring corroboration in the absence of a universal instruction regarding the noncorroberation of all other witness testimony.

*Id*. at 493 (cleaned up).

The second case Stark cites is *State v. Mathis*, which reaffirms the propositions set forth in *Kraai*. 971 N.W.2d at 519–20 (holding that "[a]s in *Kraai*, we hold the district court erred in instructing the jury that '[t]here is not requirement that the testimony of an alleged victim of sexual offenses be corroborated,'" and because there was not a counter balancing instruction regarding other witnesses' uncorroborated testimony, the instruction unduly

and improperly emphasizes the complaining witnesses' testimony (citation omitted)).

But Stark's claim that *Kraai* and *Mathis* present an "old rule" was not raised below. The district court did not decide or provide any analysis on the issue. Rather, Stark argued to the district court that *Kraai* and *Mathis* created a new rule that retroactively applies to his case. Stark cannot now, for the first time, raise this issue on appeal since it was never argued to or decided by the district court. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in the trial court."). We will therefore address Stark's original argument: that *Kraai* and *Mathis* create a *new* rule of law and that should apply retroactively on collateral review.

The United States Supreme Court stated in *Teague v. Lane*, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. 288, 310 (1989). Our supreme court adopted and applied the *Teague* framework in *Brewer v. State*, 444 N.W.2d 77, 81 (Iowa 1989). Under *Teague*, new rules do not retroactively apply to final convictions on collateral review except in two narrow exceptions. *See Teague*, 489 U.S. at 310–11. If the change in the law: "(1) places certain types of individual, private conduct beyond the ability of lawmakers to proscribe; or (2) creates a 'watershed' rule of criminal procedure implicating issues of fundamental trial fairness," then a new rule retroactively applies. *See Brewer*, 444 N.W.2d at 81 (citations omitted). The first exception does not apply here, as *Kraai* and *Mathis* do not "accord constitutional protection to any primary activity." *See Teague*, 489 U.S. at 311. The second exception is extremely narrow and was closed by the United

States Supreme Court in *Edwards v. Vannoy* after recognizing a long line of cases that did not qualify under the watershed exception. 593 U.S. 255, 270–72 (2021) ("[F]or decades, the Court has rejected watershed status for new procedural rule after new procedural rule. . . . New procedural rules do not apply retroactively on federal collateral review. The watershed exception is moribund."). Since *Kraai* and *Mathis* do not fall into either category, their holdings cannot retroactively apply to Stark's case on collateral review.

### III.    Freestanding Actual Innocence Claim

Finally Stark makes a freestanding claim of actual innocence. To meet this standard, Stark must prove "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict [him]." *Schmidt v. State*, 909 N.W.2d 778, 797 (Iowa 2018). He must also show he is factually and "actually innocent of the offence for which he . . . was convicted, including any lesser included offenses." *Dewberry*, 941 N.W.2d at 6. We balance "the liberty interest of a factually innocent person to be free from conviction and criminal sanction against the state's legitimate interests in finality and the conservation of judicial resources." *Id.* at 5.

Stark is unable to meet this burden. Stark offered no new evidence at his PCR trial. Instead, he testified that his touching of the victim's genitals was not for his own sexual arousal, just as he did in his original criminal trial. The jury in the original trial heard the same testimony and convicted Stark, determining that Stark's undisputed, repeated contact with the victim's genitals was sexually motivated or for the purpose of his arousal. The record below shows that Stark would spend time alone with the victim in his bedroom with the door closed and locked. The victim's older sibling testified that he tried to enter the locked bedroom while Stark and the victim were

engaged in horseplay. Stark admitted to touching the child's genitals. It was up to the jury to determine whether Stark's contact with the child was sexually motivated or for the purpose of his arousal. Based on the evidence in the record, a reasonable fact could come to such a conclusion. Stark cannot show by clear and convincing evidence that no reasonable fact finder could have convicted him. We therefore deny his freestanding claim of actual innocence.

**AFFIRMED.**